# Rogers v. Carroll.

*Summary Proceeding against a Sheriff.*

1. *Sheriff; limitation of powers of deputy.*—A person who is regularly employed as a deputy by a sheriff and in such capacity serves writs and other process is a general deputy, and the sheriff has no power to deprive such general deputy of his power to receive process for service, nor limit his power to the service of such writs or process as should be delivered to him by the sheriff himself; and where a summons is regularly issued and delivered to such general deputy, the sheriff is liable for his failure to serve the same, notwithstanding the limitations attempted to be placed upon his authority.

2. *Same.*—Mistakes of law can not excuse nor protect the sheriff from liability for the failure on his part, or on the part of his deputy, to serve a process regularly issued ; and the fact that his deputy believes that a summons, which was regularly issued to him could not be served after the first day it was in his hands, because there was less than twenty days to intervene between the return term of the

court, is a mistake of law, and does not relieve the sheriff from liability for his failure to serve the summons.

APPEAL from the Circuit Court of Pike.
Tried before the Hon. J. W. FOSTER.

This was a motion made by the appellant, B. A. Rogers, for a summary judgment against the appellees, M. W. Carroll, as sheriff, and the sureties on his official bond, for failure to serve a summons and complaint in a suit in which the movant was plaintiff and one Hodge was defendant. The evidence showed that M. W. Carroll was sheriff; that LaFayette Carroll was chief deputy of the sheriff, and that Reeves was a regularly employed deputy of the sheriff; that the summons and complaint were placed in the hands of Reeves in the afternoon of 8th of January, 1895, while said Reeves was in the sheriff's office, the sheriff being absent. Court commenced on 28th January. Hodge the defendant lived in Troy, 150 yards from residence of sheriff, and his place of business was just across the square from the court house. On the afternoon of the 8th of January, 1895, until late supper he was out on the edge of town; from that time to time of trial he was at his place of business every day, passing to and from said place to his residence for meals. Reeves, on afternoon of 8th of January, after receiving the summons and complaint, went two or three times to Hodge's place of business to serve it; but after this no further effort was made to serve it, and it remained in the sheriff's office.

The sheriff, on his examination in chief on behalf of defendants, testified as follows : "That Reeves was employed by him to serve papers such' as his son Fayette gave him to serve. That Reeves under his contract of employment, had no authority to receive any papers in office, that he and his son were the only authorized ones to receive papers in office, and to give them out; that the summons and complaint in this case was not received by him, Carroll, or any one authorized by him." On cross examination the sheriff testified, "that Sam Reeves was his regularly employed deputy, and served papers of all sorts that were to be served by the sheriff and also summonses and complaints ; that said Reeves had no authority to serve the summons and complaint in question in this case ; that said Reeves had no authority to serve

a paper until it was given to him for that purpose, and that when papers came in the office he or his son Fayette, who was chief deputy, gave out the papers they wanted served, and that this summons and complaint was not given out to Reeves to be served by either of them. That he never objected to the service or execution of any paper by Reeves, and that Reeves served most of the papers.''

Sam Reeves testified that ''he was the regularly employed deputy of the sheriff; that he served a great many kinds and sorts of papers for the sheriff; that he received papers in all sorts of cases and kinds from the clerk and served them; that he arrested prisoners, levied executions and attachments, and did all kinds of work connected with the sheriff's office, and served most of the papers; that his headquarters were in the sheriff's office; that he was in said office when the summons and complaint in question in this case were handed him on the 8th January, 1895, late in the afternoon; that the sheriff was not in the office at the time it was brought in, and witness told the plaintiff's attorney that he was too late; that the time was out for serving it the day before; that soon thereafter he (Reeves) went with it across the street to defendant's, Hodge's, place of business, but Hodge was not there, and he went there two or three times that afternoon to serve him but he was out each time; that the said paper, after said attempt to serve it was returned to and remained in the sheriff's office, and no further effort was made to serve it; that the clerk would give him and deliver him summonses and complaints, and all other sorts of papers for service, and that he would serve them, and that he in this way served a great many of the papers of the office, and the sheriff never made any objection thereto although he knew it.''

Among the charges asked by the movant, and to the court's refusal of each of which he separately excepted, was the following: ''If the jury believe the evidence, they must find for the plaintiff.''

There were verdict and judgment for the defendants. The plaintiff appeals and assigns as error the refusal of the court to give the charges requested by him, and the rendition of judgment in favor of the defendants.

HUBBARD, WILKERSON & HUBBARD, for appellant, cited Code, §§ 2661–63 ; *Mathis v. Carpenter*, 95 Ala. 156; *Johnson v. State*, 100 Ala. 57; *Waddell v. Neel*, Minor 386.

PARKS & HARMON, *contra*, cited Code §§ 2651–55; *Ex parte Locke*, 46 Ala. 77.

McCLELLAN, J.—On all the evidence, Reeves was a general deputy of Carroll, the sheriff ; he was a deputy *sheriff*, as distinguished from a specially deputized agent of the sheriff for a particular purpose. His powers, generally speaking, were those of the sheriff himself, and his acts were those of the sheriff ;he had the same power to receive and to execute all ordinary process as had the sheriff, and his acts or omissions under or in respect of process were the acts or omissions of the sheriff. In legal contemplation he and the sheriff were one officer, so far as third persons are concerned, as to all questions of civil responsibility. Standing thus in the stead of the sheriff and being the sheriff for all practical purposes affecting third persons, the public have a right to assume that he has all the powers incident to the office he holds and to require of him the exercise of those powers in its behalf, and to hold the sheriff liable civilly for his defaults. This is a responsibility which the law not only casts upon the sheriff, but which it also forbids the sheriff to cast off or to attempt to shield himself from by limiting the powers of his general deputy. For it was long ago held that though the sheriff may appoint persons to do particular acts only, and though he may remove an under-sheriff or general deputy at his pleasure, yet he cannot limit or abridge the powers of such under-sheriff or deputy while he continues in office ; and a case arising on a covenant of an under-sheriff not to execute any process over twenty pounds without the sheriff's leave, the court held the covenant void "as being against law and justice ; for since being made under-sheriff he is liable by law to execute all process, he could, no more than the sheriff himself, covenant not to execute powers without another's special warrant ; for that is to deny or delay justice."—*Norton v. Semmes*, Hobart 13. And in another old case it was declared that "the office of under-sheriff is an entire thing, and can neither be given

nor taken away in parcels, and that public policy requires that a suitor has a right to expect of an officer the full exercise of his official powers, and must not be met with a secret understanding between the subordinate and the superior by which that exercise is forbidden."—*Chamberlain v. Goldsmith*, 2 Brownl. 281. The later authorities are all in line with these to the establishment of the proposition that the sheriff has no power to limit the authority of a general deputy, and that all such efforts are abortive and all understandings between them to that effect are void.—Murfree on Sheriffs, §§ 18, 61, 76; Crocker on Sheriffs, § 13; 5 Am. & Eng. Encyc. of law, pp. 626–628, 634; *Abrecht v. Long*, 27 Minn. 81; *Guarantee Trust & Safe Deposit Co. v. Buddington*, 23 Fla. 514.

The wisdom of this doctrine is strikingly illustrated in the present case where a suitor, finding a general deputy in and in charge of the sheriff's office, called on him to execute a process which was then placed in his hands, and, the general deputy having failed to execute the process, the sheriff now pleads, in defense of the motion made against him, that this general deputy had no power to execute any process except such as should be given into his hands by himself, the sheriff, or by a certain other general deputy.

The abstract shows that a summons and complaint were placed in the hands of Reeves, for services on the defendant. We assume this was a regular summons issued by the clerk of the court, and that the transcript shows these facts, else the statement of the abstract could not be true, as it must be taken to be in the absence of a counter abstract. And it is not material that the summons was handed to Reeves by the attorney for the plaintiff instead of by the clerk; it was none the less for this a valid summons in the hands of Reeves for service upon the defendant. Nor can there be anything in the suggestion that Reeves was without authority to receive the writ; he had the same authority and was under the same duty to receive it as was vested in and rested on the sheriff himself. The defendant in the writ lived in the same town and within one hundred and fifty yards of, and carried on a mercantile business just across the street or square from the sheriff's office, where the summons was delivered to Reeves. He made some

[McGhee *et al.* v. Wilson.]

effort to find the defendant the day the writ came to his hands, but failing to do so kept the writ without further effort, though he had more than two weeks afterwards before the return day in which to have served it. He seems to have been under the impression that the summons could not be served after the first day it was in his hands because there was less than twenty days to intervene before the return term of the court; but this was a mistake of law which can neither excuse him nor protect the sheriff.—Code, §§ 2661-63.

We are of the opinion that on the uncontroverted evidence the sheriff was liable to the statutory penalty for failing to execute this summons; and the court should have given the affirmative charge for the movant as requested. See *Southern Bell Tel. & Tel. Co. v. Francis*, 109 Ala. 224.

Reversed and remanded.