MURDOCK, Justice.
Michael Shelley petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying Shelley’s motion to dismiss the negligence and wantonness claims filed against him by Michelle Irvin on behalf of Terry Irvin, who is deceased. Shelley also *889 petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its orders denying Shelley’s motions to dismiss and to stay discovery concerning the negligence and wantonness claims filed against him by John Rice. In both petitions, Shelley asks this Court to direct the trial courts to enter orders granting his motions to dismiss. We deny the petitions.[1]

I. Factual Background and Procedural History

For purposes of these petitions, the parties agree that the facts are not in dispute. At the time of the incident in question, Michael Shelley was a jailer at the Houston County jail, which is operated by the Houston County Sheriffs Office. Terry Irvin was a prisoner in the custody of the Houston County Sheriffs Office. On July 22, 2008, Shelley — acting in the line and scope of his duties as a jailer — was transporting Irvin from the Kilby Correctional Facility to the Houston County jail. Rice was driving west on Alabama Highway 110/Vaughn Road in Montgomery County when he reached the intersection of Highway 110 and Pike Road. Shelley was driving south on Pike Road when he reached the intersection. Both Michelle Irvin and Rice allege that Shelley ran a red light at the intersection of Pike Road and Highway 110 and, as a result, Shelley’s vehicle collided with Rice’s vehicle. The accident killed Terry Irvin, and Rice suffered injuries that required surgery.
On October 8, 2008, Michelle Irvin, as administrator of the estate of Terry Irvin, filed an action against Shelley and the Houston County Commission in the Montgomery Circuit Court, alleging negligence and wantonness (“the Irvin action”). Irvin sued Shelley in Shelley’s individual capacity, seeking an award of money damages. The Houston County Commission filed a motion to dismiss based in part on Irvin’s failure to file a notice of claim with Houston County. Shelley filed a motion to dismiss or, in the alternative, a motion for a summary judgment based on the doctrine of State immunity under Art. I, § 14, Ala. Const.1901.
The trial court dismissed the Houston County Commission as a defendant on the ground that Irvin failed to first file a notice of claim with Houston County as required by §§ 6-5-20 and 11-12-8, Ala. Code 1975. The trial court denied Shelley’s motion, however, stating, in pertinent part:
“The existing Alabama caselaw holds that sheriffs, with certain exceptions, are absolutely immune, as executive officers of the state. The Alabama Supreme Court has extended this absolute sovereign immunity to deputy sheriffs, e.g., on the rationale that deputies are alter egos or legal extensions of the sheriff. Defendant Shelley’s motion is denied because no Alabama case has extended this absolute immunity beyond individuals who are either sheriffs or deputy sheriffs.”
On November 24, 2008, Rice filed an action in the Montgomery Circuit Court alleging negligence and wantonness against Shelley and Houston County (“the Rice action”). As in the Irvin action, Rice sued Shelley in Shelley’s individual capacity, seeking an award of money damages.
On December 23, 2008, Shelley filed a motion to dismiss or, in the alternative, a motion for a summary judgment in the Rice action based on the doctrine of State immunity under Art. I, § 14, Ala. Const. *890 1901.[2] Shelley simultaneously filed a motion to stay discovery pending resolution of the immunity issue.
On February 12, 2009, the trial court denied Shelley’s motion to stay discovery without explaining its reasons for doing so. Shelley filed a motion to alter, amend, or vacate that order on February 27, 2009, arguing that allowing discovery to proceed effectively abrogated his immunity defense. The trial court likewise denied that motion without elaboration.[3] On April 9, 2009, the trial court denied Shelley’s motion to dismiss without further explanation and set a hearing on his motion for a summary judgment for May 5, 2009.
Shelley has petitioned this Court for writs of mandamus in both the Irvin action and the Rice action, requesting that this Court order the trial courts in those respective actions to vacate their orders denying his motions to dismiss and to grant those motions based on his assertion that he is entitled to State immunity under Art. 1, § 14, Ala. Const.1901.

II.Standard, of Review

“ ‘The writ of mandamus is an extraordinary legal remedy. Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala.1993). Therefore, this Court will not grant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the Court. See Ex parte Wood, 852 So.2d 705, 708 (Ala.2002).’
“Ex parte Davis, 930 So.2d [498,] at 499 [ (Ala.2005) ]. ‘ “[I]f an action is an action against the State within the meaning of § 14, such a case ‘presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.’ ” ’ Ex parte Davis, 930 So.2d at 499 (quoting Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004), quoting in turn Patterson v. Gladwin Corp., 835 So.2d 137, 142-43 (Ala.2002)). ‘ “Therefore, a court’s failure to dismiss a case for lack of subject-matter jurisdiction based on sovereign immunity may properly be addressed by a petition for the writ of mandamus.” ’ Ex parte Davis, 930 So.2d at 499-500 (quoting Ex parte Alabama Dep’t of Mental Health & Retardation, 837 So.2d 808, 810-11 (Ala.2002)).”
Ex parte Hale, 6 So.3d 452, 456 (Ala.2008).

III.Analysis

Article I, § 14, Const, of Ala.1901, states that “the State of Alabama shall never be made a defendant in any court of law or equity.” This constitutional provision “has been described as a ‘nearly impregnable’ and ‘almost invincible’ ‘wall’ that provides the State an unwaivable, absolute immunity from suit in any court.” Ex parte Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala.2006) (quoting Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 872 (Ala.2004); Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002); and Alabama *891 State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994)).
Article Y, § 112, Ala. Const.1901, provides in part that “[t]he executive department” of the State of Alabama “shall consist of a governor ... and a sheriff for each county.” Based on §§ 14 and 112 of the Alabama Constitution, this Court concluded in Parker v. Amerson, 519 So.2d 442, 442-43 (Ala.1987), that, aside from certain recognized exceptions not applicable here,[4] “[a] sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office.... ”
“We have also held that deputy sheriffs are immune from suit to the same extent as sheriffs. ‘In general, the acts of the deputy sheriff are the acts of the sheriff. The deputy sheriff is the alter ego of the sheriff.’ Carr v. City of Florence, Alabama, 916 F.2d 1521, 1526 (11th Cir.1990), quoted with approval in Drain v. Odom, 631 So.2d 971, 972 (Ala.1994), and Wright v. Bailey, 611 So.2d 300, 303 (Ala.1992). ‘[Under Alabama law, a] deputy is legally an extension of the sheriff. If the deputy’s acts are generally considered the acts of the sheriff, it is logical that those acts should enjoy the same immunity covering the sheriffs own acts.’ Carr, at 1526, quoted with approval in Wright v. Bailey, at 303.”
Alexander v. Hatfield, 652 So.2d 1142, 1144 (Ala.1994).
Shelley contends that because he was acting in the line and scope of his employment with the Houston County Sheriffs Office when the accident occurred, he is entitled to “State immunity” under Art. I, § 14. Among other things, he cites Ex parte Sumter County, 953 So.2d 1235, 1239 (Ala.2006),[5] for the proposition that “ ‘[djeputies and jailers are alter egos of the Sheriff and are state employees. Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536, 537 (1944).’ ” (Quoting plaintiffs motion for partial summary judgment.)
With respect to Shelley’s reliance on Sumter County, we first note that the case of Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536 (1944), cited in Sumter County *892 for the proposition that deputy sheriffs and jailers are alter egos of a sheriff does not state that a jailer is such an alter ego. The above-quoted passage, which this Court actually was quoting from the motion for partial summary judgment filed by the plaintiff in Sumter County, appears to reflect an inaccurate combining by that plaintiff of the positions of deputy sheriff and jailer because the deputy sheriffs sued in Sumter County were acting as jailers at the time of the incident at issue.
Moreover, in Sumter County itself, the issue of the liability of a jailer was not presented. The import of that portion of the analysis in which the Court quoted the above-quoted statement was to reject the plaintiffs argument that the County was vicariously liable for the acts of its deputy sheriffs; it was only to that end, and not for the purpose of addressing a deputy sheriffs (much less a jailer’s) amenability to suit in his individual capacity, that the opinion points out what the Court essentially considered a concession by the plaintiff in that case.
In that portion of the Sumter County opinion that actually addresses the immunity of the sheriff and his deputies, the Court makes no mention of jailers:
“As stated above, sheriffs and deputy sheriffs are executive officers of this State, pursuant to the Ala. Const.1901, Art. V, § 112. Parker, 519 So.2d at 443. Moreover, claims against sheriffs and deputy sheriffs are ‘barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901,’ Coleman v. City of Dothan, 598 So.2d 873, 875 (Ala.1992) (quoting White v. Birchfield, 582 So.2d 1085, 1088 (Ala.1991)), when the sheriffs or the deputies were ‘acting within the line and scope of their employment.’ Ex parte Purvis, 689 So.2d 794, 795 (Ala.1996).”
953 So.2d at 1239. We therefore do not find Sumter County to provide support for Shelley’s position.
We also note that Shelley does not seek any protection from suit under the doctrine of “State-agent immunity” recognized in the plurality opinion in Ex parte Cranman, 792 So.2d 392 (Ala.2000),[6] with respect to actions against State officials and employees in their individual capacities. Specifically, Shelley does not seek State-agent immunity for “[ejxercising judgment in the enforcement of the criminal laws of the State.” Cranman, 792 So.2d at 405. Instead, Shelley asserts protection under the doctrine of State immunity for sheriffs as recognized in Ex parte Purvis, 689 So.2d 794 (Ala.1996). As the Court in Sumter County explained:
“This State immunity afforded sheriffs and deputies is not affected by this Court’s decision on State-agent immunity in Ex parte Cranman, 792 So.2d 392 (Ala.2000): ‘We do not deal here with the absolute immunity of witnesses, judges, prosecutors and legislators, nor do we overrule Ex parte Purvis, 689 So.2d 794 (Ala.1996).’ 792 So.2d at 396 n. 2; see also Ex parte Haralson, 853 So.2d at 930 n. 1 (‘In Cranman, although we restated the rule governing State-agent immunity, we did not address the State immunity afforded to sheriffs and deputy sheriffs for actions taken while working in the line and scope of their employment, and we did not overrule Ex parte Purvis, 689 So.2d 794 (Ala.1996).’).”
953 So.2d at 1239-40.[7]
The fact remains, however, that Shelley is neither a sheriff nor a deputy sheriff. *893 We turn, therefore, to Shelley’s argument that this Court should adopt the rule enunciated by the United States Court of Appeals for the Eleventh Circuit in Lancaster v. Monroe County, 116 F.3d 1419 (11th Cir.1997), which purported to extend “State immunity” beyond sheriffs and deputy sheriffs to jailers working for a sheriffs office.
Lancaster arose out of the death of Harold Michael Lancaster while he was in custody at the Monroe County jail. Lancaster had been arrested and jailed for driving under the influence of alcohol. Lancaster’s family repeatedly warned a jailer at the Monroe County jail in Mon-roeville where Lancaster was being kept that Lancaster was going through alcohol withdrawal and that if he did not receive treatment when the alcohol in his system wore off, he would have life-threatening seizures. Despite these warnings, and despite promises from the jailer that he would monitor Lancaster closely, the jailers at the Monroe County jail rarely checked on Lancaster. Lancaster indeed had a seizure and suffered a fatal head injury as a result.
Cynthia Lancaster, as administratrix of Lancaster’s estate, sued several defendants, including Monroe County Sheriff Thomas Tate and the jailers who were on duty during Lancaster’s stay in the Monroe County jail. She alleged that those defendants were liable under 42 U.S.C. § 1983 for violating Lancaster’s rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments and that they were liable under Alabama tort law for causing Lancaster’s wrongful death.
The United States District Court for the Southern District of Alabama concluded that both Sheriff Tate and the jailers were entitled to immunity in their official and individual capacities. On appeal, Cynthia Lancaster did not dispute that Sheriff Tate was a State official and that he was therefore entitled to immunity in his official capacity. She argued, however, that the jailers were not entitled to immunity in either their official or individual capacities.
The United States Court of Appeals for the Eleventh Circuit first observed that
“[a] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state’s immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama’s immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.”
Lancaster, 116 F.3d at 1429 (citations omitted). Thus, the court of appeals reasoned, if the jailers were State officials, they were entitled to Eleventh Amendment immunity in their official capacities.
The Lancaster court noted that
“ ‘[t]o determine whether a state official is covered by Eleventh Amendment immunity, we consider the laws of the state.’ Carr [v. City of Florence, 916 F.2d 1521, 1525 (11th Cir.1990)]. In Carr, we held that under Alabama law deputy sheriffs are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. 916 F.2d at 1526. We reached that conclusion after considering three factors: *894 (1) the relationship between sheriffs and deputies under Alabama law; (2) the control that the county exercises over sheriffs and deputies; and (3) whether an award of damages against the deputies in their official capacities would be paid with state funds. See id. at 1525-26.”
116 F.3d at 1429. Applying the factors from Carr v. City of Florence, 916 F.2d 1521 (11th Cir.1990), the Lancaster court
“agree[d] with the district court that Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. As the district court noted, under Alabama law jailers carry out the sheriffs duty to maintain ‘legal custody and charge of the jail in his county and all prisoners committed thereto.’ See Ala. Code § 14-6-1 (1975).[8] Although jailers may not function as an ‘extension’ of the sheriff to the same degree that deputies do, because a jailer cannot undertake every act that the sheriff could perform, cf. Carr, 916 F.2d at 1526 (deputies are a legal extension of the sheriff because they act as sheriffs agent and can perform any act within sheriffs authority), nevertheless, jailers are responsible to the sheriff for their performance of state-mandated duties. Sheriffs and jailers have a close working relationship under Alabama law.
“That working relationship is not sufficiently intruded upon by county control to deny jailers Eleventh Amendment immunity for official capacity claims.”
116 F.3d at 1429-30.
Regarding immunity from Lancaster’s state-law claims in the jailers’ individual capacities, the Lancaster court stated:
“Like sheriffs, jailers have a statutory duty to obtain medical care for sick prisoners. See Ala.Code § 14-6-19 (1975). The Alabama Supreme Court has never addressed whether a suit brought against a jailer in his individual capacity alleging negligent performance of his statutory duties should be treated as a suit against the state. Yet, given our holding that jailers are entitled to Eleventh Amendment immunity for official capacity claims, we find no reasonable basis for distinguishing claims against the jailers from claims against the sheriff. In deciding whether an action against a state officer is, in fact, an action against the state, Alabama law instructs us to consider the nature of the action and the relief sought. See Phillips [v. Thomas ], 555 So.2d [81] at 83 [ (Ala.1989) ]. According to Parker v. Amerson[, 519 So.2d 442 (Ala.1987) ], if the ‘nature of the action’ is a suit against a state official for the negligent performance of his statutory duties, that action is in reality a suit against the state. See 519 So.2d at 446....
“We believe the Alabama Supreme Court would accord the same treatment to Ms. Lancaster’s claims of negligence and wrongful death against the jailers that it has given claims against sheriffs and deputy sheriffs. Accordingly, we hold that those claims are barred by Alabama’s absolute sovereign immunity.”
116 F.3d at 1431. It is this ruling from Lancaster that Shelley urges this Court to adopt.
As the Court of Appeals for the Eleventh Circuit noted in Lancaster, this Court had not considered whether a county jailer, like a sheriff and his deputies, is *895 entitled to absolute immunity under § 14. Thus, Lancaster is, at best, persuasive authority on this issue. Moreover, because the doctrine of sovereign immunity denies plaintiffs a recovery for injuries from otherwise potentially liable defendants, this Court must be deliberate about extending the doctrine. See City of Anniston v. Hillman, 220 Ala. 505, 509, 126 So. 169, 172 (1930) (stating that “the courts, from an impelling sense of justice, have sought to define a line beyond which the doctrine of immunity shall not be extended”).[9]
Shelley’s argument for extending State immunity to cover a jailer employed by a sheriff hinges on this Court’s determination in Hereford v. Jefferson County, 586 So.2d 209 (Ala.1991), that deputy sheriffs are immune from suit to the same extent as are sheriffs. Shelley contends that, like a deputy sheriff, he carries out some of the duties of the sheriff on behalf of the sheriff; he reasons that, therefore, when he is acting in the line and scope of his employment, he should be clothed with the immunity sheriffs possess as executive officers of the State.
Shelley’s argument, based on the duties he performs for the sheriffs office, misunderstands, however, the nature of § 14 immunity. A sheriff is entitled to State immunity because of his status as a constitutional officer as detailed in Art. V, § 112, Ala. Const. 1901. Suits against such officers for actions taken in the line and scope of their employment inherently constitute actions against the State, and such actions are prohibited by § 14. See Haralson, 853 So.2d at 932 (reiterating that “[a] sheriff is an executive officer of this State pursuant to the Alabama Constitution of 1901, Art. V, § 112 [and a]s an executive officer, a sheriff is immune from being sued in the execution of the duties of his office under Art. I, § 14, Alabama Const. 1901”).
Shelley contends that no rational distinction exists between the extension of immunity to deputy sheriffs in cases such as Ex parte Blankenship, 893 So.2d 303 (Ala.2004), and Ex parte Davis, 9 So.3d 480 (Ala.2008), and his claim to immunity in this case. In Blankenship, this Court deemed a deputy sheriff to be immune from a suit resulting from his involvement in an automobile accident because the allegations in the complaint stated that the deputy was acting in the line and scope of his employment when he caused the collision. In Davis, this Court deemed two deputy sheriffs to be immune from suit in an action arising out of their alleged failure to care for an inmate at the Jefferson County jail who they had been informed had Graves disease and needed medical attention. The inmate died from complications from Graves disease shortly after being released from the jail.
Shelley contends that Blankenship and Davis involve situations where deputies were carrying out duties of the sheriff in a vehicle or as jailers, both of which Shelley says he was doing in the present case. Shelley argues that the Court applied *896 State immunity in those cases because the actions taken by the deputies were taken pursuant to the sheriffs executive power; Shelly insists that because he was also acting on behalf of the sheriff when the events occurred that resulted in Terry Irvin’s death and Rice’s injuries, he should also be immune.
This Court has stated on several occasions, however, that “deputy sheriffs are immune to the same extent sheriffs are immune because ‘ “[t]he deputy sheriff is the alter ego of the sheriff.” ’ ” Haralson, 853 So.2d at 932 (quoting Hereford, 586 So.2d at 210, quoting in turn Mosely v. Kennedy, 245 Ala. at 450, 17 So.2d at 537). An alter ego is, by definition, a second self; the deputy is “ ‘legally an extension of the sheriff.’” Wright, 611 So.2d at 303 (quoting Carr, 916 F.2d at 1526 (emphasis added)).
In Mosely, this Court cited Rogers v. Carroll, 111 Ala. 610, 20 So. 602 (1896), for the proposition that a deputy sheriff is the alter ego of the sheriff. Rogers explained the nature of the relationship between a sheriff and the sheriffs deputy, as opposed to others employed by a sheriff to carry out particular tasks:
“On all the evidence, Reeves was a general deputy of Carroll the sheriff. He was a deputy sheriff, as distinguished from a specially deputized agent of the sheriff for a particular purpose. His powers, generally speaking, were those of the sheriff himself, and his acts were those of the sheriff. He had the same power to receive and to execute all ordinary process as had the sheriff, and his acts or omissions under or in respect of process were the acts or omissions of the sheriff. In legal contemplation, he and the sheriff were one officer, so far as third persons are concerned, as to all questions of civil responsibility. Standing thus in the stead of the sheriff, and being the sheriff for all practical purposes affecting third persons, the public have a right to assume that he has all the powers incident to the office he holds....”
Rogers, 111 Ala. at 613, 20 So. at 602 (emphasis omitted). Thus, because “[i]n legal contemplation, [a deputy] and the sheriff [are] one officer, so far as third persons are concerned,” it is logical that a deputy shares in the immunity afforded to sheriffs. Id. (emphasis added). Compare Wheeler v. George, 39 So.3d 1061, 1093 (Ala.2009) (acknowledging the “long-standing precedent treating the deputy as an alter ego of the sheriff,” but declining to embrace a more general notion that State officials serving in the executive branch are “deputy governors” for purposes of State immunity as to suits against them in them individual capacities for money damages).
In contrast, a jailer working for a sheriffs office cannot properly be viewed “in legal contemplation” as “an extension of the sheriff’ or as “one officer” with the sheriff. The Lancaster court itself acknowledged that “jailers may not function as an ‘extension’ of the sheriff to the same degree that deputies do, because a jailer cannot undertake every act that the sheriff could perform.” Lancaster, 116 F.3d at 1429. Moreover, as the Court of Appeals for the Eleventh Circuit explained in Terry v. Cook, 866 F.2d 373, 378 (11th Cir.1989), the positions appointed by a sheriff of clerk, investigator, dispatcher, jailer, and process server “traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented.” Accordingly, we do not consider a jailer in *897 Shelley’s position to be an alter ego of the sheriff as are deputy sheriffs.[10]
The doctrine of State immunity under § 14 of the Alabama Constitution, insofar as it operates to provide absolute immunity to certain State actors with respect to suits against them in their individual capacity for money damages, is a doctrine that is applicable to constitutional officers. Distinguishing between the immunity afforded in this regard by the doctrine of State immunity and that afforded by the doctrine of State-agent immunity, this Court has observed:
“When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14, our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in Ex parte Cranman, 792 So,2d 392 (Ala.2000).... However, this Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer’s individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer’s employment.”
Ex parte Davis, 930 So.2d 497, 500-01 (Ala.2005) (emphasis added). Shelley’s position as a jailer simply does not meet this requirement.

IV. Conclusion

None of this Court’s cases have extended the State immunity afforded a sheriff to any sheriffs employees other than deputy sheriffs. We decline to extend State immunity beyond that limit in this case. Accordingly, we deny Shelley’s petitions for the writs of mandamus in both the Irvin action and the Rice action seeking to direct the respective trial courts to set aside their orders denying his motions to dismiss the claims brought against him by Irvin and Rice.
1080588 — PETITION DENIED.
1080863 — PETITION DENIED.
COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.

. This Court has consolidated these actions solely for purposes of appellate review because they involve the same defendant and stem from the same incident, and Shelley requests mandamus relief on identical grounds in both actions.

. Houston County also filed a motion to dismiss on the grounds that Shelley was never employed by Houston County and that Houston County had complied with all duties with respect to the prisoner-transport vehicle. The trial court denied Houston County's motion without elaboration. Rice’s claims against Houston County are not before us in this petition, however.

. On April 30, 2009, when this Court ordered answers and briefs on Shelley's petition in the Rice action, it stayed all proceedings in the trial court pending disposition of the petition for the writ of mandamus.

. Parker explained that § 14 immunity does not shield a sheriff from an action brought
"(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.”
Parker, 519 So.2d at 443. Our decisions have recognized another category of actions against State officials in which the official is not shielded from immunity, i.e., " 'valid inverse condemnation actions brought against State officials in their representative capacity.' " Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831, 840 (Ala.2008) (other citations omitted). It does not appear that this Court has ever had occasion to consider whether this latter category would, in an appropriate circumstance, apply to a sheriff.

. Sumter County concerned a wrongful-death action filed by the administrator ad litem for the estate of Jeffrey D. Fenner. According to the administrator ad litem, Fenner was traveling by bus from Dallas, Texas, through Alabama, on March 15, 2003, when he allegedly suffered an episode of paranoia and delusions and had to leave the bus near Cuba, Alabama, in Sumter County. Fenner made his way to the McBride Truck Stop in Cuba. His behavior was such that employees summoned Cuba Police Chief Chris Vaughan, who arrested Fenner for assault and disorderly conduct. Fenner was transported to the Sumter County jail and placed in a cell. Sometime thereafter, Fenner committed suicide by hanging himself. The administrator ad litem sued the sheriff and his deputies, alleging that their lack of care for Fenner in the county jail resulted in his death.

. See Ex parte Butts, 775 So.2d 173 (Ala.2000), in which a majority of this Court adopted the Cranman restatement of the rule governing State-agent immunity.

. This Court explained in Ex parte Haralson, *893 853 So.2d 928, 931 n. 1 (Ala.2003), that "[t]he immunity available to the State in an action against the State is now referred to as 'State immunity.’ ” The immunity available to defendants sued in their individual capacity for actions taken on behalf of the State is now referred to as “State-agent immunity.’1 See Cranman, 792 So.2d at 397 (distinguishing between State immunity and State-agent immunity).

. In Parker, this Court declared § 14-6-1, Ala. Code 1975, unconstitutional under § 14 of the Alabama Constitution to the extent that it purports to hold sheriffs liable for the actions of their jailers. See Parker, 519 So.2d at 446.

. We have, of course, previously rejected the notion that the immunity provided the State in Art. I, § 14, infringes upon the right to legal remedies provided in Art. I, § 13. See Jones v. Alabama State Docks, 443 So.2d 902, 905 (Ala.1983) (rejecting the contention that our courts must narrowly construe § 14 to permit actions for damages against State agencies because it would "constitute[ ] an impermissible erosion of the 'almost invincible’ ‘wall’ of the state's immunity, as established ‘by the people through their Constitution' ” (quoting Hutchinson v. Board of Trs. of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971))). There is a difference, however, between imposing a narrow. construction upon § 14 and ensuring that the limits of immunity are clearly defined. We take the latter as our charge in the present case.

. That the immunity at issue here may be extended only to one who is the executive officer's alter ego is not surprising given that such immunity as is provided by § 14 may be considered "purely personal” and "it is the relation between the persons concerned or the office that the privileged person holds that is important and there can be no delegation." Restatement (Second) of Torts § 891, Comment (b) (1979). This is so because the immunity belongs to the State, not the individual, and extends to executive officers only because of their close connection with the State. See Cranman, 792 So.2d at 401 (noting that § 14 "speaks only to a prohibition of lawsuits against the State and does not mention lawsuits against individuals”). Likewise, the same immunity extends to deputies because their position — unlike that of a jailer— mirrors that of the sheriff, who is an executive officer.