[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14712
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-01383-RDP


TIMOTHY T. HOLMES,

Plaintiff-Appellant,

versus

MIKE HALE,
Jefferson County Sheriff Department,

Defendant,

OFFICER DANIEL BILLINGS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 28, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Timothy Holmes brought 42 U.S.C. § 1983 and Alabama state law claims against a Jefferson County, Alabama sheriff and deputy sheriff. The district court dismissed his claims based on the officers' immunity. Proceeding pro se, Holmes appeals.[1]

I.

In reviewing the district court's judgment, we accept as true the allegations in Holmes' amended complaint. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1194 (11th Cir. 2007). Around 3:00 p.m. on June 20, 2014, while in his home office, Holmes heard a "knock[ ]" and "banging" on his front door. He was wearing only pajama pants, and as he began to put on more clothes, he saw "some people running through [his] backyard" and heard "the crashing of his back door." Frightened, he hid in his closet. He was not armed.

Two police officers pulled him out of his closet and threw him on the floor. One of those officers "placed his boot on [Holmes'] neck and head as he grinded [Holmes'] face into the carpet." The other officer "twisted [Holmes'] arms to place them in a handcuff." A third officer, Deputy Daniel Billings, "placed his knee on [Holmes'] back."

---

[1] Holmes was represented by counsel in the district court but is pro se on appeal.

2

Holmes repeatedly asked the officers why he was being arrested, and they told him to "shut up" and "further pressed down on him with their knee and foot, and even ground his face into the floor." They eventually told him that he was the subject of a warrant, although they never showed him the warrant. The officers dragged him out of his home, threw him into a patrol car, and took him to the Jefferson County police station.

At the police station Holmes lost consciousness. After he regained consciousness, his cellmates told him that he had been dragged into the cell. Holmes twice asked for medical attention, but both an officer and a nurse rejected his requests. An hour later, he was released. Although he asked for a copy of the arrest warrant or incident report, he received neither.

Holmes sued Sheriff Mike Hale and Deputy Billings.[2] Against Hale, he asserted a § 1983 failure to supervise claim under the doctrine of respondeat superior. Against Billings, he asserted a § 1983 Fourth Amendment excessive force claim, as well as state law assault and battery claims. He sought compensatory damages based on "the neck operation, humiliation, and shame" that resulted from the officers' conduct. Billings and Hale each moved to dismiss Holmes' amended complaint, based on various immunities, and the district court granted their motions.

---

[2] Holmes also sued two "fictitious officers," but the district court dismissed those claims. He does not challenge that dismissal.

3

## II.

We construe pro se briefs liberally.  See Finch v. City of Vernon, 877 F.2d 1497, 1504 (11th Cir. 1989).  Holmes contends that the district court erred by dismissing (1) his § 1983 claims against the officers in their official capacities based on sovereign immunity, (2) his § 1983 claims against the officers in their individual capacities based on qualified immunity, and (3) his state law claims against Billings based on absolute immunity under Alabama law.  Whether the officers are entitled to sovereign immunity, qualified immunity, or absolute immunity are all questions of law that we review de novo.  See Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016); Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1996).

## A.

Holmes first contends that the district court erred in dismissing his § 1983 claims against Hale and Billings in their official capacities.  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309 (1989).  "The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that

4

immunity." Id. (citations omitted).  Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it.  Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990).

Suits against state officials in their official capacities are treated as suits against the State.  Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).  In Alabama, sheriffs and deputy sheriffs — such as Hale and Billings — are state officials and, as a result, are immune to money damages claims brought against them in their official capacities.  See Carr, 916 F.2d at 1527.  Because the Eleventh Amendment bars Holmes' § 1983 claims against them in their official capacities, the district court did not err in dismissing those claims.

## B.

Holmes next contends that the district court erred by concluding that Hale and Billings were entitled to qualified immunity and dismissing his § 1983 claims against them in their individual capacities.  To be entitled to qualified immunity, "the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Mathews v. Crosby, 480 F.3d 1265, 1269 (11th Cir. 2007).  Holmes does not appear to dispute that Hale was acting within his discretionary authority in hiring and training deputies, and he concedes that Billings was acting within his discretionary authority when he arrested Holmes.  As a result, the burden shifts to Holmes to

5

show that qualified immunity is not appropriate.  See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  To do that, he must allege facts showing that Hale and Billings violated a constitutional right that was clearly established at the time of the alleged violation.  See id.; Lee v. Ferraro, 284 F.3d 1188, 1194–95 (11th Cir. 2002) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.") (quotation marks omitted).  We first address Holmes' failure to supervise claim against Hale before turning to his excessive force claim against Billings.

1.

Holmes contends that Sheriff Hale is liable for the actions of "the three [d]eputies" who used excessive force because he hired and trained them. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009); see also Keith v. DeKalb County, 749 F.3d 1034, 1047 (11th Cir. 2014) ("[I]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either

6

directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith, 749 F.3d at 1047–48.

Holmes alleged only that Hale should be liable "under respondeat superior" for failing to supervise the three officers who allegedly entered his home without a warrant and used excessive force in arresting him.  Because Holmes' failure to supervise claim against Hale rests only on the basis of respondeat superior, and because "supervisory officials are not liable under § 1983 . . . on the basis of respondeat superior," id. at 1047, Holmes' failure to supervise claim against Hale fails.  The district court did not err in dismissing that claim.

2.

Holmes next contends that Billings was "plainly incompetent" in using excessive force to arrest him, and that it is "well established that officers may not use excessive force."  The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest.  Graham v. Connor, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 1871 (1989).  We analyze an excessive force claim under the "objective reasonableness" standard.  McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009).  This Court has recognized that the typical arrest may involve some force and injury and that "the use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals

7

suspected of committing crimes." Lee, 284 F.3d at 1200.  Because police officers

are often required to make split-second judgments "in circumstances that are tense,

uncertain, and rapidly evolving," the "reasonableness of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather

than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396–97, 109 S. Ct.

at 1872.  In other words, reasonableness must be evaluated under the totality of the

circumstances.  Id. at 396, 109 S. Ct. at 1872.

As this Court explained in Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir.

2000), "the application of de minimis force, without more, will not support a claim

for excessive force in violation of the Fourth Amendment."  In that case, an officer

grabbed an arrestee, shoved him against a car, kneed him in the back, pushed his

head against the car, and searched his groin area in an uncomfortable manner. Id.

at 1255.  The arrestee "suffered bruising to his forehead, chests, and wrists." Id.

We held that those facts showed only a "minimal amount of force and injury, . . .

[which] will not defeat an officer's qualified immunity in an excessive force case."

Id. at 1258.  We also noted that those facts "sound little different from the minimal

amount of force and injury involved in a typical arrest." Id. at 1258 n.4.

Holmes alleged that Billings, who "weighs between 250–280 pounds, placed

his knee on [his] back."  But accepting that as true, it is not enough to state a claim

for excessive force.  Billings found Holmes hiding in a closet, where he could have

8

been lying in wait with a weapon.  The facts giving rise to Holmes' claim — that Billings placed his knee on Holmes' back — sound little different from the facts of the <u>Nolin</u> decision, which "sound[ed] little different from the minimal amount of force and injury involved in a typical arrest."  <u>Id.</u>  And the fact that Holmes was not armed when the officers pulled him out of the closet does not change the result.  The officers did not know whether he was armed or unarmed, and this Court must judge the reasonableness of Billings' conduct "from the perspective of a reasonable officer on the scene," not with the benefit of hindsight.  <u>Graham</u>, 490 U.S. at 396–97, 109 S. Ct. at 1872.

Holmes also alleged that he suffered a neck injury from the arrest that "resulted in a neck surgery."  But he alleged that another officer, not Billings, stepped on his neck, and as noted earlier, that officer is not a party in this case.  Although Holmes asserts that Billings' "action in concert" with that officer — "excessive force being applied to [Holmes'] back and his twisted neck simultaneously" — caused his injury, he does not provide any factual content to support that conclusory assertion.  <u>See Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he pleading standard Rule 8 [of the Federal Rules of Civil Procedure] announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quotation marks omitted).  And based on that, we cannot "draw the reasonable inference that

9

[Billings] is liable for the misconduct" that allegedly resulted in Holmes' neck injury.  See id.  That is particularly true given that Billings is entitled to a separate analysis of the applicability of the qualified immunity doctrine to his actions.  See Corey Airport Servs., Inc. v. Decosta, 587 F.3d 1280, 1288 n.6 (11th Cir. 2009) ("In the qualified immunity analysis, we generally compare the acts of each defendant to analogous case law to determine whether each defendant has violated a clearly established constitutional right.").

Because Holmes failed to allege facts showing that Billings used excessive force in arresting him, he has not alleged facts showing a violation of his Fourth Amendment rights.  As a result, Billings is entitled to qualified immunity from Holmes' excessive force claim against him in his individual capacity.

C.

Holmes also contends that the district court erred in dismissing his state law claims against Billings, arguing that Alabama's doctrine of absolute immunity does not excuse an officer from personal liability for a tort that he commits.[3]

Article I, § 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity."  That section "wholly withdraws from the legislature, or any other state authority, the

---

[3] The district court stated that, "to the extent that [Holmes] asserts state-law claims for money damages against Sheriff Hale, those claims cannot stand because Sheriff Hale is absolutely immune to them under the Alabama Constitution."  Holmes' amended complaint does not appear to allege any state law violations against Hale.  In any event, Holmes does not challenge that part of the district court's judgment, so we do not address it.

10

power to consent to an action against the [S]tate." Parker v. Amerson, 519 So. 2d 442, 445 (Ala. 1987). "Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the [S]tate." Tinney, 77 F.3d at 383. "Suits against [sheriffs] for actions taken in the line and scope of their employment inherently constitute actions against the [S]tate, and such actions are prohibited by § 14." Ex parte Shelley, 53 So. 3d 887, 895 (Ala. 2009). "[D]eputy sheriffs are immune from suit to the same extent as sheriffs." Id. at 896.

Holmes alleged that Billings, in arresting him, "acted with extreme indifference toward [his] wellbeing," which amounted to assault and battery under Alabama law. But because a deputy sheriff's duties include making arrests, see Ala. Code § 15-10-1, Billings' actions were "taken in the line and scope of [his] employment," Shelley, 53 So. 3d at 895. As a result, he is absolutely immune from Holmes' state law claims. The district court did not err in dismissing those claims.

### III.

Finally, Holmes contends that the district court erred in denying his request for discovery. We review for abuse of discretion a district court's discovery rulings. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011).

11

"The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery." Blinco v. Green Tree Servicing, LLC, 366 F.3d 1249, 1252 (11th Cir. 2004). As a result, immunity questions "should be resolved at the earliest possible stage of a litigation," Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 3042 n.6 (1987), and "[u]ntil th[e] threshold immunity question is resolved, discovery should not be allowed," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

Hale and Billings each moved to dismiss Holmes' complaint based on sovereign, qualified, and absolute immunities. Because those doctrines protected them from having to bear the burdens of litigation, including discovery, see Blinco, 366 F.3d at 1252; see, e.g., Ex parte Walker, 97 So. 3d 747, 753 (Ala. 2012), the district court did not abuse its discretion in denying Holmes' request for discovery until the threshold question of immunity was resolved, see Harlow, 457 U.S. at 818, 102 S. Ct. at 2738.

**AFFIRMED.**

12