30 So.2d 469
**JEFFERSON COUNTY v. DOCKERTY.**
6 Div. 331.

Court of Appeals of Alabama.
Feb. 11, 1947.

Rehearing Denied March 11, 1947.

Frank M. Dixon, of Birmingham, for appellee.

Harvey Deramus, of Birmingham, for appellant.

**CARR, Judge.**

This cause was submitted in the court below on the following agreed statement of facts:

"Plaintiff and defendant in the above styled cause agree upon the following statement of facts:

"1. That plaintiff, Tom Dockerty is, and at the time of the arrests out of which the claims for seizure fees herein arose was, a deputy sheriff of Jefferson County, Alabama.

"2. That within the last twelve months said plaintiff arrested certain persons whose names are listed below in possession of an unlawful quantity or quantities of prohibited liquors or of such liquors under conditions prohibited by law, and said persons were convicted in the Jefferson County Court of Misdemeanors on said charge.

"3. That the amount of prohibited liquors involved in each such case was such as to entitle said plaintiff, of Jefferson County (depending upon which was entitled to said fees by law), to the amount herein set out after the names of each such person.

"4. That the clerk of the Jefferson County Court of Misdemeanors paid the amount of such seizure fee in each case as listed to Jefferson County, and not to plaintiff.

"5. That on, to-wit, July 19, 1945, plaintiff filed with the County Commission of Jefferson County a claim for the amount of each of said seizure fees, and for the total amount of said fees, and that on, to-wit, October 16, 1945, said County Commission disallowed said claim. That said claims were in compliance with the provisions of Section 115, Title 12, Code of Alabama of 1940, and were presented for payment within twelve months after the time they accrued.

"6. That the names of the persons arrested and convicted and the amounts of the seizure fees in each case which were paid by said persons were as follows: (List of forty-four names of persons arrested, with amount of seizure fee in each case.) Said fees were taxed and collected pursuant to Sec. 129 of Title 29 of the Ala. Code of 1940.

"7. That the sole question at issue between plaintiff and defendant is whether said seizure fees are the property of plaintiff or defendant under the law.

"8. That since the General Act passed by the 1931 Legislature and which became Section 139 of Title 62 of the Code of Alabama of 1940, unchanged, there have been many seizure fees claimed by deputy sheriffs of Jefferson County under Section 129 of Title 29 of the Code of Alabama of 1940, or the identical act in the Code of 1923: that these seizure fees have been uniformly paid by the Clerk of the Jefferson County Court of Misdemeanors to the deputy sheriffs who made the claims, and not to Jefferson County; that the State Examiners of Accounts have repeatedly examined the books of the Clerk of the Jefferson County Court of Misdemeanors and made reports thereon which were submitted by said Examiners to the Governor of Alabama; and that no contention was ever made that these seizure fees should not be paid to the deputy sheriffs until a report of examination dated August 1, 1944, and which covered the period from February 1, 1943, to April 30, 1944.

"The Personnel Board of Jefferson County, Alabama, duly and legally adopted certain rules pertaining to the employment of employees of the County, which said rules became effective March 1, 1940, and since that date have been continuously in effect.

"Rule III, promulgated by the said Personnel Board, among other things, provides and stipulates as follows:

"'* * * The rate of pay set forth in the plan shall include total pay in every form, except that it shall not include allowance for actual and necessary travel expense authorized and incurred as incident to employment.'"

The trial court rendered judgment in favor of the plaintiff and the defendant prosecutes this appeal.

The presented questions appear in the agreed statement of facts. As noted therein, litigated contentions arise out of claims for the seizure fees provided in Title 29, Section 129, Code 1940. This section is: "When an officer arrests any person in possession of an unlawful quantity or quantities of prohibited liquors, or of such liquors under conditions prohibited by law, then on the conviction of such party of a violation of a city ordinance or state law, whether in the recorder's court, or state court possessing jurisdiction, a fee for making the seizure of the liquors shall be taxed up against the defendant, and paid to such officer as a part of the cost of the case as follows: If a seizure is made of not less than one gallon, nor more than five gallons of such liquors, the fee shall be three dollars; if the seizure be of more than five gallons, and less than twenty gallons, the fee shall be five dollars; and if more than twenty gallons, be seized, the fee shall be ten dollars."

The enactment just above first appeared as Section 14 of Senate Bill 857, Acts 1915, p. 557. It became a part of the 1923 Code, Section 4654, and is carried in the current code as indicated. It has retained its original provisions throughout its legislative history.

The Jefferson County Salary Amendment to the Constitution of 1901 became a part of the Constitution on November 16, 1912.

Skinner's Alabama Constitution Annotated, p. 954.

Prior to the adoption of this amendment the Legislature was confronted with the prohibitions and limitations contained in Section 96, Article IV, Constitution 1901.

With this yoke lifted by the amendment, the Legislature passed a local act (Local Acts 1915, p. 374). After naming the officials (the sheriff, judge of probate, tax collector, tax assessor, clerk of the circuit court, clerk of the criminal court, and register in chancery) to be affected and after stipulating the salary of each as a basis of compensation, the act provides: "That when this act goes into effect, the cost, charges of courts, fees and commissions now authorized by law to be collected and retained by the several officers of Jefferson county above named, shall continue to be collected, but shall be paid into the county treasury by the officer collecting the same, as other monies belonging to the county are paid."

This act was approved September 14, 1915.

The case of Waldron, Clerk v. Henry, Treasurer, 207 Ala. 128, 92 So. 425, 426, brought before the Supreme Court a question involving the construction and application of this local act. The Legislature, in 1919, passed a local "dog tax law." The act provided that the circuit clerk was entitled to a fee of 25 cents for issuing each receipt evidencing a payment of the dog license. Justice McClellan, writing the opinion, held that the clerk was privileged to retain this charge and did not have to account for it to the county treasurer. The conclusion reached was based on the following observation: "The quoted expression from section 2 had reference to the collectable fees, etc., then, in 1915, authorized by law to be exacted or received. That act neither had nor has any reference to fees, etc., later, in 1919, authorized to be collected for new and different services to be rendered by the circuit clerk in the administration of the subsequently enacted law."

This court, in Jefferson County v. Sandefer, 19 Ala.App. 647, 100 So. 71 adopted

the same reasoning in a case involving the seizure fees provided in the statute now under consideration.

■ In construing a statute, one of the canons to be applied by the court is to determine and ascertain if there are any defects or mischief against which the law is directed, and if the act seeks to provide a remedy to correct the evil. Cole et al. v. Gullatt, Judge, 241 Ala. 669, 4 So.2d 412; Ward v. State ex rel. Goldsmith, 17 Ala.App. 170, 82 So. 660.

In our opinion it is not a strained and unwarranted surmise to conclude that the Legislature perceived that the local act of 1915, supra, was too much restricted in verbiage to supply a remedy for laws subsequently enacted. The interpretation reflected by the opinions in the Cole and Ward cases, just supra, may have influenced the lawmaking bodies to extend and broaden the provisions of the act then current.

In any event, in 1931 the Legislature passed an act which had application only to Jefferson County, General Acts 1931, p. 441, Title 62, Section 139, Code 1940. We quote it: "All county officers in the county shall pay into the county treasury all fees, costs, commissions, and perquisites derived from said office or monies, charged or collected by them by reason of any official act or for the performance of any service connected directly or indirectly with said offices or for the sale of any information or the copies of any documents, papers, maps or records relating directly or indirectly to said offices. The salary fixed by law shall be the sole and only compensation received by such officers for the performance of the duties of their office or for any act or service charged for by them growing out of the performance of their official duties or connected with the operation or conduct of their respective offices."

At the regular session of 1943 the following bill was passed, General Acts Alabama, Regular Session 1943, p. 418, Code 1940, Tit. 1. § 16(1):

"Section 1. That all county officers on a salary basis in counties of this State having a population of one hundred and forty thousand (140,000) or more according to the last or any subsequent Federal census, shall pay into the county treasury all fees, costs, commissions, and perquisites derived from said office or monies, charged or collected by them by reason of any official act or for the performance of any service connected directly or indirectly with said offices or for the sale of any information or the copies of any documents, papers, maps or records relating directly or indirectly to said offices.

"Section 2. Be it further enacted that the salary fixed by law shall be the sole and only compensation received by such officers for the performance of the duties of their office or for any act or service charged for by them growing out of the performance of their official duties or connected with the operation or conduct of their respective offices.

"Section 3. That this act shall become effective upon its approval by the governor.

"Approved July 6, 1943."

So much for the history of the laws which must control the decision of the case at bar.

As we view our task in the matter of instant inquiry, it is not essential or controlling that we determine whether or not a deputy sheriff is a county officer within the meaning of that term as it appears in Title 62, Section 139 and Acts 1943, p. 418, supra.

■ It is unquestionably the law that a deputy sheriff is the alter ego of the sheriff under whom he serves. Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536; Rogers v. Carroll, 111 Ala. 610, 20 So. 602; National Surety Co. v. Boone, 227 Ala. 599, 151 So. 447.

In the performance of his official duties the acts of the deputy sheriff are in effect the acts of his principal. 57 C.J., Section 194, p. 797; 47 Am.Jur., p. 929, Section 154.

In the case of Mosely v. Kennedy, supra [245 Ala. 448, 17 So.2d 537], the Supreme Court held that the sheriff, as against the claim of his deputy, was entitled to the $50 reward provided by the terms of Section 102, Title 29, Code 1940. Kennedy was the sheriff and Mosely the deputy. Justice Stakely, in writing for the court,

observed: "Johnnie C. Mosely took an active part in all the cases involved in this suit. We conclude that a proper decision in this case turns on whether Johnnie C. Mosely furnished the evidence and brought about the convictions while acting on his own responsibility and initiative as an officer or individual or whether this result was achieved under the leadership of the sheriff through the facilities and activities of the sheriff's organization, of which Johnnie C. Mosely was only a part. Answer to this question lies in the evidence."

It is clearly apparent that the court is here drawing a line of demarcation between the performances of the deputy as they relate to his individual and his official acts. The section there considered gives a field of operation for the distinction indicated. It provides, inter alia, that the sum of $50 be allowed "the sheriff or other officer or *person* who furnished the evidence and brought about the conviction, and who shall satisfy the presiding judge that he is the person entitled to said sum." (Emphasis ours.)

The instant statute, Title 29, Section 129, supra, limits the payment of the seizure fee to *an officer.*

■ The agreed statement of facts here can bear no interpretation other than that the appellee was at the time of the seizures a deputy sheriff of Jefferson County, that in his official capacity as such he arrested certain persons who were in possession of unlawful quantity or quantities of prohibited liquors, and that upon the basis of the conviction of these parties the seizure fee is claimed. These facts appearing without conflict, it is authoritatively sustained that the deputy was acting for his principal, the sheriff. Authorities, supra.

■ It follows, therefore, that the sheriff, and not the deputy, is entitled to the fees, and unquestionably the former is a county officer.

We will give further consideration to the matters involved due to the indicated importance of our decision.

Should the claimed seizure compensations have been paid into the county treasury? Our considered conclusion is that this query must be answered in the affirmative. We will illustrate.

■ It appears to us to be a matter of immaterial inquiry to determine whether or not these sums are included in the fees, costs or commissions set out in Section 139, Title 62, supra. Without doubt, in our opinion, they are among the "perquisites derived from said office."

Webster's New International Dictionary defines "perquisite" to be "a gain or profit incidentally made from employment in addition to regular salary or wages, esp. one of a kind expected or promised; also, pay for work; income."

■ 32 Words and Phrases, Per.Ed., page 183, gives this meaning: "'Perquisite' means something gained by a place or office beyond the regular salary or fee."

"A 'perquisite' is a fee that a person in office may lawfully receive for service rendered beyond the requirements of his official duties." Funk & Wagnall's New Standard Dictionary of the English Language. See also Vol. 2 Bouvier's Law Dictionary, Rawle's Third Revision, Perquisites; Black's Law Dictionary.

"Any profit or pecuniary gain from services beyond the amount fixed as salary or wages; hence, any privilege or benefit claimed as due. In law, a fee that a person in office may legally receive beyond the requirements of his official duties; a fee allowed by law to an officer for a specific service; a reward, a compensation, a profit, or a gain arising out of, or received because of, the possession of a public office." 48 C.J., p. 1036, Perquisite. See also Vansant v. State, 96 Md. 110, 53 A. 711; Ware v. City of Battle Creek, 201 Mich. 468, 167 N.W. 891, L.R.A. 1918E, 673; County of Lake v. Westerfield, 196 Ill.App. 432.

In the case of City of New York v. McCormick, 144 Misc. 245, 247, 258 N.Y.S. 388, 391, the City of New York based its claim upon the terms of a section of its charter which contains provisions in many respects in counterpart with those of the act upon which the instant question is predicated. The facts are dissimilar, but the logic and reasoning of the opinion are illustrative and convincing. We quote therefrom:

"* * * the word 'perquisite' carries with it the idea that the incumbent of the office is entitled to demand the payment from the person making it, as something pertaining to or attaching to the office. * * * In my opinion the word 'perquisite' in its natural meaning embraces only such moneys as the incumbent of an office is entitled to demand for performing any of the duties of the office, and is not broad enough to embrace gratuities * * *."

By the provisions of Section 129, Title 29, supra, only an officer is entitled to claim the seizure fee, and its payment by the convicted party is made mandatory by the requirement that it be taxed against the defendant and paid to the officer as a part of the costs incident to the case.

We cannot escape the conclusion that the instant claims are for "perquisites derived from said office." A contrary view would, in our conception, be out of harmony with the clear, explicit, obvious, and unmistakable meaning of the language of the statute involved; and in conflict with the manifest ·intent and purpose of the Legislature in an effort to provide for fixed and standard salaries for county officers in counties coming under the influence of the act.

We are aided also in reaching our conclusions by other provisions of the statute. A study of the act, taken in its entirety, leads to inescapable reliance on the correctness of our view.

Our demonstrations are not in discord with the holding in Dallas County v. Kennedy, 246 Ala. 558, 21 So.2d 678. In that case the Supreme Court was dealing with a statute which in many respects is different from the instant section. Under the provisions of Title 29, Section 102, Code 1940, there in question, the $50 reward is allowable to a "sheriff or other officer or *person* who furnished the evidence and brought about the conviction * * *." (Emphasis, the court's.) Also, there is another controlling influence that makes the cases dissimilar. The Constitutional Amendment, XLVI (1945 Cumulative Pocket Part, Titles 1-6, Code 1940), is not so inclusive and meaningful as the act upon which the question at hand is predicated.

The Dallas County amendment in pertinent part provides: "The above named officers are hereby required to collect all charges of court, fees, commissions, allowances, percentages, salaries or other compensation provided by law, other than the salaries herein fixed, and to cover the same into the county treasury."

We are not unmindful of the weight that we should give to "Administrative Construction." This rule, however, applies only where the intent and purpose of the statute is to the construing court of doubtful meaning. If the court is clearly of the opinion that the construction given the statute by the officers, who are charged with the duty of its enforcement, is erroneous, there remains no occasion or place for presumptions in favor of the method or manner of this enforcement.

As the Supreme Court observed in State et al. v. Tuscaloosa Building & Loan Association, 230 Ala. 476, 161 So. 530, 534, 99 A.L.R. 1019: "We have no right, under the guise of construction, to rewrite the law. We can only learn what they (the Legislature, we interpolate) intended, from what they have said. When their language is plain, no discretion is left with us. 'We have no right to stray into the mazes of conjecture, or to search for imaginary purposes.' "

To ignore this canon of construction would tend to misplace the responsibility now imposed upon the courts to construe the acts of the lawmaking bodies.

While we do not consider it to be of special material inquiry, yet it is interesting to note that the inital methods employed for the payment of the seizure fees in question were later interrupted and changed to accord with what we now declare to be the intent of the Legislature with reference thereto. It is likely and probable that the mind of the State accounting department became focused on the matter by the enactment of House Bill No. 836, General Acts 1943, p. 418, supra.

Able briefs of counsel who represent both party litigants have aided us in giving a studious and careful consideration to the questions presented by this appeal.

The judgment of the primary court is not in accord with our views. It is, therefore, ordered that said judgment be and is reversed and one rendered here in favor of the appellant.

Reversed and rendered.