SHAW, Justice.
In case no. 1130359, Mobile County, the Mobile County Commission (“the Commission”), and the individual members of the Commission (hereinafter referred to collectively as “the County”), the defendants/counterclaim plaintiffs below, appeal from the Mobile Circuit Court’s judgment ordering the County to provide certain funding to the District Attorney’s Office for the Thirteenth Judicial Circuit (hereinafter “the District Attorney’s Office”). In case no. 1130404, Ashley Rich, who is the district attorney for the Thirteenth Judicial Circuit and the plaintiff/counterclaim defendant below, cross-appeals. We affirm in case no. 1130359. In case no. 1130404, we affirm in part, reverse in part, and remand.

Facts and Procedural History

On May 25, 2012, Rich, in her capacity as district attorney, filed a complaint against the County seeking declaratory relief and damages. Rich alleged that, under Act No. 82-675, Ala. Acts 1982 (“the 82 Act”), as amended by Act No. 88^23, Ala. Acts 1988 (“the 88 Act”) (hereinafter referred to collectively as “the local acts”), the County was obligated to provide certain funding to the District Attorney’s Office for the 2011-2012 fiscal year and it had failed to do so. Specifically, Rich contended that the 88 Act gave the district attorney for the Thirteenth Judicial Circuit the authority to appoint 27 assistant district attorneys (“ADAs”) and 1 chief assistant district attorney (“CADA”). At the time Rich filed the complaint, only 22 ADAs were employed in the District Attorney’s Office. Rich also argued that the local acts required the County to provide funding for certain other employees of the District Attorney’s Office and that the funding levels for those employees had increased over time. Rich alleged that the County had failed to provide sufficient funds to pay salaries for the full number of employees for the District Attorney’s Office as required by the local acts.
Rich contended that the 82 Act required the County to provide funds sufficient to compensate eight “legal stenographers” and to purchase certain equipment and supplies for the investigative unit of the *1187 District Attorney’s Office. Further, Rich contended that the 82 Act authorized the County to pay for office supplies and equipment for the District Attorney’s Office. Although the County had appropriated $1,555,203 for the District Attorney’s Office for the 2011-2012 fiscal year, Rich contended that significantly more funds were due to be appropriated under the local acts. The complaint was later amended to add similar claims for later fiscal years.
All the judges of the Thirteenth Judicial Circuit recused themselves from the action. Judge George K. Elbrecht of the Monroe District Court was appointed to preside over the action.[1]
The County filed an answer and a counterclaim. The County contended, among other things, that it had complied with the funding requirements of the local acts. Further, the County argued that the District Attorney’s Office had received funding from other sources and, thus, that Rich was required to remit to the County some of the funds that had previously been provided the District Attorney’s Office pursuant to the local acts.
The parties subsequently filed opposing motions for a summary judgment. The trial court held a hearing on the motions on March 26, 2013, and then ordered the parties to mediation, which was unsuccessful.
On April 15, 2013, the County filed its second amended counterclaim arguing, among other things, that the local acts were unconstitutional. Rich moved to strike the amendment, which motion was denied. On June 6, 2013, in what was styled as its third amended counterclaim, the County moved for leave to amend its pleadings to allege additional constitutional claims.
On August 27, 2013, the County again moved for leave to amend its answer, this time to allege waiver, stating that “[pjrior District Attorneys have failed to enforce and follow the requirements of the 82 and 88 Acts.” The trial court granted that request.
On November 18, 2013, the trial court issued an “order on pending motions.” The trial court denied the motion for leave to file the third amended counterclaim; thus, the trial court refused to consider certain constitutional arguments by the County contained in that pleading. The trial court went on to hold that the local acts were not unconstitutional based on the arguments presented by the County. Further, it held that Rich was entitled to hire a CADA and a total of 27 AD As, that the salary-funding schedule provided in the 88 Act applied and amended the salary-funding schedule in the 82 Act, and that the salary-funding schedule would increase when raises are provided to State or County employees. However, the trial court held that the fact that prior district attorneys and the County had previously not followed the salary-funding schedules in the local acts amounted to a waiver of any request for funding for those previous years; thus, no additional funding amounts were required to be paid for the period between 1982 and 2011. Additionally, the trial court held that the salary-funding schedules had not been modified by raises by the County or State occurring before its order, but would be increased by any future raises. Further, the trial court ruled that the County was responsible for providing all funding under the salary-funding schedule, less the State’s funding *1188 liability, which was limited to $15,000 for each position and did not increase.
Further, the trial court held that the 82 Act required the County to pay for up to eight “legal stenographers.” Although the District Attorney’s Office did not have employees with that title, the trial court held that the employees called “trial coordinators” filled the role contemplated by the phrase “legal stenographers” in the 82 Act and, thus, that the County must henceforth provide the funding for those positions. Further, the trial court held that the County was required under the 82 Act to purchase supplies for the investigative unit (but not to fund the salaries of employees for that unit) and that it had the discretion, but was not required, to fund the general-office expenses of the District Attorney’s Office. Finally, the trial court held that the County was not required under the local acts to provide funds for vacant employee positions.[2]
On November 18, 2013, the trial court entered a “final order” making certain evi-dentiary rulings, denying a motion by the County to reconsider its decision to disallow the third amended counterclaim, and further noting that neither party owed the other any damages. Both sides filed post-judgment motions, which the trial court denied.

Case No. 1130359

I.

On appeal, the County contends that the local acts violate Ala. Const.1901, Art. IV, § 96, § 72, and § 68.
SO 05»
As to § 96, the County notes that there exists a historical trend to eliminate local supplementary funding to county courts. It argues that the local acts are barred by § 96, which states: “The legislature shall not enact any law not applicable to all the counties in the State, regulating costs and charges of courts, or fees, commissions or allowances of public officers.” The County explains that the purpose of the provision is to ensure uniform court costs and charges Statewide. See Barnes v. State ex rel. Tate, 26 Ala.App. 450, 451, 162 So. 404, 405 (1935) (“ ‘Section 96 of the Constitution ... was a declaration of public policy of the State of Alabama that the costs and charges of court should be uniform throughout the State.’” (quoting circuit judge’s order)). It then argues that although local amendments to the constitution can exempt counties from this provision, no such local amendment exists for Mobile County. See Jefferson Cty. v. Dockerty, 33 Ala.App. 30, 33, 30 So.2d 469, 471 (1947) (noting that the “yoke” of § 96 was “lifted” in Jefferson County by the Jefferson County Salary Amendment to the constitution, now Ala. Const.1901, Local Amendments, Jefferson County, § 5 (Off. Recomp.)).
The County further contends that Act No. 1205, Ala. Acts 1975, the act implementing the Unified Judicial System provided in the judicial article to the constitution adopted by Amendment No. 328 to the Alabama Constitution of 1901 (now § 139 et al. (Off. Recomp.)), designates that the salaries of ADAs are “costs and charges of courts” as contemplated by § 96. The portion of Act No. 1205 the County cites, codified at Ala.Code 1975, § 12-19-2, states:
*1189 “(a) All counties shall continue, from January 16, 1977, through September 30,1977, to support court services within their respective counties at not less than the same level of expenditures for such court services during the fiscal year ending September 30, 1976; provided, that the county level of expenditure for court services may be decreased to the extent and for individual items, formerly paid by the county, assumed by the State on January 16,1977.
“(b) All authorized appropriations for court services of any kind, including but not limited to county solicitors, assistant district attorneys and other prosecution and defense expenses, in effect on January 15,1977, for county courts to be abolished and replaced by district courts and for circuit courts shall continue to be provided by the counties from January 16, 1977 through September 30, 1977, for district and circuit court services.”
(Emphasis added.)[3]
The language in § 12-19-2 appears to describe appropriations for ADAs in terms of appropriations for “court services.” However, this is nothing more than a description of the appropriations arrangement under the structure that existed he-fore, and that was phased out by, the establishment of the Unified Judicial System. It does not designate appropriations for ADAs’ salaries as “costs and charges of courts” as contemplated by § 96.[4]
Further, Rich notes that prior opinions indicate that § 96 governs only situations involving laws applicable to county officers. See Opinion of the Justices No. m, 255 Ala. 656, 658, 53 So.2d 367, 369-70 (1951) (“[S]ection 96 only applies to such county offices as are common to all counties.”); State ex rel Shirley v. Lutz, 226 Ala. 497, 501, 147 So. 429, 432 (1933) (“The members of the board here created are State officers, not county officers. Their fees and allowances provided in the act are not within section 96 of the Constitution. This section deals with county officers, and only such county officers as are common to all the counties of the State.”); and Baumhauer v. State ex rel. Smith, 240 Ala. 10, 13, 198 So. 272, 274 (1940) (“The act was not offensive to Section 96 of the Constitution. This section was only applicable to such county officials or officers as are common to all the counties of the State.”). The local acts explicitly designate the CADA and the ADAs as State officers. Thus, it does not appear that CADAs or ADAs are “public officers” *1190 as described in § 96. For these reasons, we see no merit in the argument that the local acts violate § 96.

B. § 72

The County next argues that the local acts violate § 72. That section provides:
“No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof; and a regular statement and account of receipts and expenditures of all public moneys shall be published annually, in such manner as may be by law directed.”
(Emphasis added.)
The County maintains that the salaries of the employees of the District Attorney’s Office are paid by checks drawn on the State treasury. It states: “[The salaries] were ‘payable’ and paid out of the State treasury. With this direct evidence of payment of State employees in the [District Attorney’s Office] from the State treasury, it is clear that the Local Acts compelling solely Mobile County to do the same are unconstitutional and void.” Specifically, the County argues that to compel it “to pay these State expenses violates Section 72.”
Section 72 is a “legislative restriction on the power to make appropriations.” Opinion of the Justices No. 78, 249 Ala. 389, 390, 31 So.2d 558, 559 (1947). Here, the local acts do not, themselves, “appropriate” money from the State treasury; instead, they require the County to provide funding to the District Attorney’s Office. Nothing before us indicates that the County’s payments are “paid out of the [State] treasury.” There is also no authority cited or argument presented that funding provided by a county must comply with § 72. Further, there is no argument that the actual warrants received by the employees of the District Attorney’s Office were not properly issued pursuant to lawful appropriations. The County thus has not demonstrated a violation of § 72.

C. § 68

The County argues that the local acts violate § 68. That section provides:
“The legislature shall have no power to grant or to authorize or require any county or municipal authority to grant, nor shall any county or municipal authority have power to grant any extra compensation, fee, or allowance to any public officer, servant, or employee, agent or contractor, after service shall have been rendered or contract made, nor to increase or decrease the fees and compensation of such officers during their terms of office.... ” .
The County contends that Rich “sought retroactive pay for her [ADAs] and [CADA] by mathematically assuming all State and county merit and cost .of living increases be included in her new salary schedule for [ADAs]. This remedy is unconstitutional under Section 68.” County’s brief at 31.
No “retroactive pay” was awarded in this case. Specifically, the trial court held that previous district attorneys and the County had, in the past, not followed the funding requirements of the local acts. Thus, the trial court held that it would not grant “back pay or amounts due” for salary increases that should have occurred before 2011.[5]
*1191 The County acknowledges that the trial court “denied the retroactive claim,” but it states that the trial court’s remedy “is outright unconstitutional under Section 68.” County’s brief at 32. However, the County does not explain why this is the case.
As Rich argues, the local acts do not require “extra” compensation for ADAs “after service [has] been rendered,” but instead require funding for compensation provided at the time “services” were rendered. See generally Op. Att’y Gen. No.1982-00336 (May 11,1982) (“Section 68 does not prohibit the payment for services previously rendered where the right to compensation arose at the time services were rendered.”). Additionally, it does not appear that the CADA and the ADAs, who, according to Rich, are at-will employees, are “officers” with “terms of office” who, under § 68, cannot have an “increase” in “compensation.” Specifically, in Cobbs v. Home Insurance Co. of New York, 18 Ala.App. 206, 208, 91 So. 627, 628-29 (1920), the Court of Appeals suggested that § 68 does not apply to at-will employees, because their “salary or wage may be changed at any time, either by law or by mutual contract,” and that the subsequent creation of a pension for such employees “is not a gratuity, but a part of the stipulated consideration, for which they contracted and served.” 18 AlaApp. at 208, 91 So. at 629, Further, in Opinion of the Justices No. 72, 249 Ala. 88, 91, 30 So.2d 14, 17 (1947), the Justices stated that an “increase in compensation” to “officers who have a fixed and unexpired term” would violate § 68, but no such increase in compensation to “all others whose compensation may be increased” would violate § 68.
Here, the County has not demonstrated that the CADA and the ADAs are “officers” for purposes of § 68, or that the requirement to provide funding for any employee positions in the District Attorney’s Office constitutes “extra compensation .-.. after service [was] rendered.'” Therefore, the trial court’s judgment is due to be affirmed on this ground.

II.

The County contends that the trial court erred in disallowing its June 6, 2013, third amended counterclaim, which attempted to add allegations that the local acts violated certain constitutional provisions.
The factual scenario leading to the trial court’s decision is as follows. At the March 26 hearing on the motions for a summary judgment, the trial court noted that there was no challenge to the constitutionality of the local acts and indicated that it was inclined to enter a summary judgment for Rich on several dispositive issues. However, it desired the parties to mediate the issue of the proper salary-funding schedule required by the 88 Act. The County suggested that there was no need for a trial, and the trial court thus ordered that the hearing on the remaining summary-judgment issues be heard on April 15, the date originally scheduled for trial.
At the April 15 hearing, it was reported in open court that mediation to arrive at the proper salary-funding schedule had failed. The County also raised several constitutional issues and filed a motion for leave to file a second amended counterclaim delineating those claims. Rich objected to those new arguments, maintaining, among other things, that the County was raising new, purportedly dispositive issues after the trial court had previously indicated its intentions to rule in Rich’s favor. The trial court, however, accepted the second amended counterclaim and ordered briefs.
*1192 On May 13, the County filed its brief. Rich argued that the County raised constitutional issues in that brief that were not specifically alleged in the second amended counterclaim, including the challenge to the 82 Act on the basis of Ala. Const.1901, Art. IV, § 106; Art. XII, § 218; Art. XVII, § 281; and Amendment No. 397 (now Local Amendments, .Geneva County, § 6 (Off. Recomp.)). Thereafter, on June 6, the County filed its request to submit its third amended counterclaim, which alleged the new constitutional arguments discussed in the May 13 brief. The request stated:
“In accordance with Rule 15(b)[, Ala. R. Civ. P.,] the County files this Third Amended Counterclaim to conform to the evidence presented in the County’s Brief on Constitutional Issues and responded to by the District Attorney in its Motion to Strike and Response to the County’s brief.”
Rich filed a response to the motion, contending that the latest effort to amend the pleadings was “in response to [her] uncontested averment that the defendants have failed to plead several constitutional arguments made in their [May] brief.” Rich challenged the applicability of Rule 15(b), Ala. R. Civ. P., and whether the County had shown good cause under Rule 15(a), Ala. R. Civ. P. Further, Rich argued that Rule 15(b) does not allow parties to “ambush” opposing parties at the last minute. The motion for leave to file the third amended counterclaim was denied in open court at a July 1 hearing.
On appeal, the County’s sole argument is that the trial court was required by Rule 15(b) to accept the third amended counterclaim.
Rule 15(b) states:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be sub-served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party’s action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. An amendment shall not be refused under subdivision (a) and (b) of this rule solely because it adds a claim or defense, changes a claim or defense, or works a complete change in parties. The Court is to be liberal in granting permission to amend when justice so requires.”
In deciding whether a trial court should accept an amendment under Rule 15(b), this Court has stated:
“ ‘Rule 15(b) is not permissive: it provides that issues tried by express or implied consent shall be treated as if raised in the pleadings.’ Hawk v. Bavarian Motor Works, 342 So.2d 355, 358 (Ala.1977) (first emphasis added). ‘If a party objects to the introduction of evidence at the trial on the ground that it is not within the issues framed by the pleadings, he must show that he would be actually prejudiced in maintaining his action or defense on the merits by *1193 the admission of the evidence.’ Id. (emphasis added).
‘“We also note that a determination “as to whether [an] issue has been tried by express or implied consent under Rule 15(b) is a matter for the trial court's sound discretion, which ivill not be altered on appeal absent an abuse [of that discretion].” ’ International Rehab. Assocs., Inc. v. Adams, 613 So.2d 1207, 1214 (Ala.1992) (quoting McCollum v. Reeves, 521 So.2d 13, 16 (Ala.1987)). ‘ “[Wjhether pleadings are deemed to be amended in order to conform to the evidence presented is also a matter within the discretion of the trial court,” and a decision in that regard will not be disturbed on appeal absent an abuse of discretion.’ Adams, 613 So.2d at 1214 (quoting McCollum, 521 So.2d at 16-17).”
Ammons v. Tesker Mfg. Corp., 853 So.2d 210, 216-17 (Ala.2002) (final emphasis added).
As Rich notes, the request for leave to file the third amended counterclaim was not filed after a “trial.”
“Regardless of whether [the defendants] would be prejudiced by the proposed amendment, the plaintiffs’ motion is ill-founded because Rule 15(b) provides for amendments to the complaint in order to conform to evidence presented during a trial, and there has been no trial in this case. Rule 15(b) states, in pertinent part: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.’ (Emphasis added.)”
Swanstrom v. Teledyne Continental Motors, Inc., 43 So.3d 564, 582 (Ala.2009) (first emphasis added).
Although evidentiary materials were filed in the various hearings on the parties’ motions, we see no “trial” on the evidence as contemplated by Rule 15(b). Here, the County’s third amended counterclaim, for all that appears, was not in response to evidence presented at trial, but in response to Rich’s objection that certain constitutional issues argued by the County in support of the second amended counterclaim were not specifically alleged in that pleading. The County cites no authority for the proposition that amendments to the pleadings under Rule 15(b) are applicable in the context of responses to dueling summary-judgment motions; no authority is cited showing that such a scenario equates to a trial on the evidence.[6]
“Generally, amendments are to be liberally allowed. However, the trial court is given discretion in the exercise of that liberality.” First Alabama Bank of South Baldwin v. Prudential Life Ins. Co. of America, 619 So.2d 1313, 1317 (Ala.1993). Although by no means an automatic rule, this Court has upheld the exercise of discretion by trial courts in disallowing, in certain contexts, amendments filed shortly before or after motions for summary judgment are filed or heard. See Brackin v. Trimmier Law Firm, 897 So.2d 207, 228 (Ala.2004) (holding that the trial court did not exceed its discretion in disallowing an amended complaint that, among other things, was filed “after the defendants had already submitted their motions seeking a summary judgment and briefs in support of those motions”); Hays Corp. v. Bunge Corp., 777 So.2d 62 (Ala.2000) (holding that the trial court did not exceed its discretion in disallowing an amendment to a complaint filed six days before a hearing on a motion for summary judgment), overruled on other grounds, Jim Walter Homes, Inc. *1194 v. Saxton, 880 So.2d 428 (Ala.2003); Government Street Lumber Co. v. AmSouth Bank, NA., 553 So.2d 68 (Ala.1989) (holding that the trial court did not exceed its discretion in striking an amended complaint filed contemporaneously with a response to the opposing party’s motion for summary judgment); and Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala.1989) (holding that the trial court properly struck an amendment to a complaint that was filed within two weeks of the setting for hearing of the motion for summary judgment). Cf. Deputy Sheriffs Law Enforcement Ass’n of Mobile Cty. v. Mobile Cty., 590 So.2d 239, 243 (Ala.1991) (holding that the trial court did not exceed its discretion in disallowing an amendment Sled after summary judgment had been entered). Rule 15(b) does not, on its face, appear applicable in this case, and we do not believe that the County has demonstrated that the trial court exceeded its discretion or otherwise erred in refusing the tardy amendment. Because the claims in the third amended counterclaim were not ruled upon by the trial court and the County has suffered no adverse judgment on the merits of those claims, we pretermit any discussion of them.

III.

The County next argues that the trial court erroneously interpreted the local acts.
“ < “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’ “Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992))....”
DeKalb Cty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998).
First, as noted above, Rich argued in the trial court that the 82 Act required that the funding levels for the salaries of the CADA and the ADAs be increased every time either the State or the County gave raises to their employees. Specifically, § 14 of the 82 Act provides:
“At any time that the Legislature ... shall approve an increase in the salaries of State employees, and at any time [the County] shall approve an increase in the salaries of County employees, the salaries paid employees of the District Attorney for the Thirteenth Judicial Circuit shall be increased accordingly; and the schedules of salaries paid personnel of the District Attorney’s Office as set out in the provisions of this Act shall be increased.”
(Emphasis added.) Rich also contended that, after the enactment of the 88 Act, the County was obligated to provide funding for raises provided by both the County and the State. Section 1(d) of the 88 Act provides:
“Of the total annual compensation to be paid the aforementioned [CADA] and [ADAs], each shall be paid an annual salary by the State of Alabama of $15,000.00.... The remainder of the annual compensation as provided in the schedule of salaries hereinabove set out, of each of the aforementioned [CADA] and [ADAs] shall be paid by the county comprising the Thirteenth Judicial Circuit, which sum shall be paid from the general funds of said County, in equal *1195 installments as the salaries of other county officers are paid.”
(Emphasis added.)
The trial court agreed with Rich and held:
“[T]he plain language of this provision makes the County responsible for all but $15,000 of the salaries of each [ADA], Prospectively the County shall be responsible for paying raises approved by the State and/or County. When the State approves a raise [for] State employees and/or when the County approves a raise for County employees, the County shall fund all but $15,000 of the salaries of [ADAs].... ”
On appeal, the County contends that, under the language of § 1(d) of the 88 Act, the County is obligated to provide funding only at the levels explicitly stated in the salary-funding schedule found in the 88 Act. Specifically, it points to the language in that section stating that, after $15,000 is paid by the State for the CADA and each ADA, the County pays the remainder of the compensation found “in the schedule of salaries.” The County appears to interpret this to mean that it pays only the amounts listed in the schedule found in the 88 Act, not adjusted to reflect any raises that might have subsequently followed.
The County’s argument does not, however, square with the language of § 14 of the 82 Act, which remains effective after the enactment of the 88 Act. Specifically, § 14 of the 82 Act requires that any raises by either the State or the County increase the salary-funding schedules. The 88 Act replaced the CADA and the ADA schedule in the 82 Act; there is now a new funding schedule, but that schedule is still “increased” under § 14 every time the County or the State gives its respective employees a raise. The State’s obligation is now, by the 88 Act, “capped” at $15,000, necessarily requiring the County to fund the remainder of the salaries. In other words, the State is required to fund only the first $15,000 of each position, and the County pays the remainder found in the salary-funding schedules as modified, via § 14 of the 82 Act, by subsequent raises to State or County employees. We see no merit in the County’s argument.
The County also contends that the trial court misinterpreted § 14 of the 82 Act. Specifically, it argues that the language of § 14 actually requires the County and the State separately to fund the raises they may provide their employees. Any time either the legislature or the County increases the salaries of their respective employees, the County explains, under § 14 “the salaries paid employees of the District Attorney ... shall be increased accordingly.” The County contends that what is “increased accordingly” is the State’s or the County’s respective obligation to provide funding for the raises they may have adopted.
We disagree. It is clear from the language that the salary-funding levels of the employees are “increased accordingly” by any raises those entities may provide, and not the County or State’s respective funding obligations.[7] The County contends that this historically has not been the case, and that the State has actually funded past increases. Nevertheless, the language of the local acts is clear on this particular issue, despite both the County’s and State’s prior widespread failure to follow the local acts.

*1196
IV.

The County also challenges the trial court’s holding that it must fund eight “legal stenographer” positions in the District Attorney’s Office. Specifically, § 7 of the 82 Act permitted the appointment of up to eight “legal stenographers.” The section provided a “compensation” range with a maximum of $12,000 and provided that the salaries of the legal stenographers be funded by the County. The trial court held that Rich’s employees designated as “Trial Coordinators,” which, under § 5 of the 82 Act, were funded by the State, were actually “legal stenographers” that must be, under § 7, funded by the County.
On appeal, however, the County contends that Rich does not actually employ “legal stenographers”; instead, she employs persons who have the title “Trial Coordinators.” Section 5 of the 82 Act authorized the district attorney to hire a “Trial Coordinator” and designated that the State would fund that employee’s compensation. The County contends that the 82 Act contemplates that “Trial Coordinators” and “legal stenographers” are different positions funded by different sources.
In support of its argument, the County cites Rich’s deposition testimony. In it, she explains that the employees at issue, although classified as “Trial Coordinators,” actually performed the duties of legal stenographers and that “[t]hey take notes for the lawyer.” They were called “Trial Coordinators,” she testified, because “many legal secretaries ... don’t like to be called legal secretaries” and because they “perform services for the lawyer. They go to court with the lawyer. They write down everything the lawyer does in court. They write down in the—they document, document, document. Their job is to document everything that the lawyer is doing with regard to that file.” The business manager for Rich’s office also testified that those employees “do more than just legal stenographer work.”
The 82 Act does not define either the term “Trial Coordinator” or the term “legal stenographer.” This Court is presented with nothing more than undisputed testimony that the employees in Rich's office called “Trial Coordinators” actually perform the work of “legal stenographers” (among other things). With no analysis by the County as to how those employees should be considered “Trial Coordinators” and not “legal stenographers,” as those terms are used in the 82 Act, we have been given no reason to overturn the trial court’s decision on this ground.

V.

The County claimed in the trial court, and claims on appeal, that it is entitled to a reimbursement of certain funds it has previously provided to the District Attorney's Office. Specifically, the County contends that that office has received funding from certain outside sources (e.g., grants) that was earmarked to pay salaries or portions of salaries of members of Rich’s staff whose salaries were also being funded by the County. The County thus contends that it is entitled to a reimbursement for the portions of the salaries it funded that were also covered by funding from other sources.
Alabama law, through the local acts, requires the County to provide certain funding for certain positions in the District Attorney’s Office. That Rich’s office may receive funding from other sources does not impact that requirement; the outside funding does not impact the County’s statutory obligation. The County contends that Rich was forbidden from wrongfully expending funds, see Ala.Code 1975, § 41-4-95, but provides no authority or legal argument to demonstrate that any funds that the County was required to provide *1197 and that were duplicative must be refunded. Therefore, the trial court’s judgment on this issue is affirmed.

VI.

Finally, the County contends that the trial court erred in granting a post-judgment motion by Rich seeking to require the County to provide funding for two additional ADAs hired in October 2013 during the proceedings in this case and before the trial court’s final judgment. Specifically, the County notes that the trial court’s judgment requires Rich, under Ala. Code 1975, § 11-8-3, to submit a budget request to the County so that it can budget the funds it will provide to the District Attorney’s Office. The County contends that the hires that occurred during the middle of the budget year by Rich and her demand that the County fund those hires are outside the normal budgetary process and violate the trial court’s order that Rich participate in that process. It is unclear whether those hires violate the trial court’s judgment, because they were made before the trial court's November 18, 2018, orders in this case directing Rich to submit a budget under § 11-8-3. Additionally, it is unclear how the hires negatively impacted the County’s budgeting process, because it appears that the County was, pursuant to its position that the local acts were ineffective, not fully funding the District Attorney’s Office as required by the local acts in the first place. Thus, the trial court’s order on this ground is affirmed.

VII.

The trial court’s rulings that are challenged by the County are affirmed.

Case No. 1130I0I

I.

Rich, in her cross-appeal, appears to identify two issues as to which she says the trial court erred. First, she contends that the trial court erred in holding that the 82 Act did not require the County to provide funding for the salaries of certain individuals working in the investigation unit of the District Attorney’s Office. Specifically, Rich notes that § 2(d) of the 82 Act states:
“The County ... shall purchase from its general fund, upon application by the District Attorney, all equipment and supplies, including but not limited to automobiles, radios and other electronic equipment, which are necessary in the proper performance of the duties of such investigators and pay for such other expenses which are reasonably necessary in the suppression of crime, the apprehension of criminals and the duties assigned them. The governing body of said county shall be responsible for the maintenance and upkeep of such equipment.”
Rich contends that “other expenses which are reasonably necessary” includes the “expense” of compensating non-investigators in the unit, including a criminal-history investigator, a secretary, and off-duty sheriffs deputies “who serve as warrant officers.”
In light of the full text of § 2 of the 82 Act, we disagree. The remainder of the section states:
“(a) The District Attorney ... shall be authorized to appoint not less than four investigators....
“(b) The District Attorney ... shall be authorized to designate one investigator to serve as Chief Investigator.... The total annual compensation paid to the Chief Investigator shall be paid by the State of Aabama from the general fund of the State in equal installments as the salaries of other State officers are paid.
*1198 “(c) The total annual compensation paid to each investigator, excluding the Chief Investigator, shall be not less than $16,000.00 nor more than $27,000.00, said compensation to be determined by the District Attorney. The total annual compensation paid to each investigator shall be paid by the State of Alabama from the general fund of the State in equal installments as the salaries of other State officials are paid.”
It is clear from the text of the 82 Act that the salaries of certain personnel in the investigation unit are explicitly referred to by the terms “salaries” and “compensation.” It also explicitly designates the entity that must fund those salaries: the State. Nothing before us indicates that “salaries” or “compensation” of other personnel would be included in the different term “expenses.” Further, § 2(d) generally appears to refer to funding for equipment and supplies, not personnel. The language of the 82 Act does not support Rich’s argument; therefore, the trial court’s judgment on this issue is affirmed.
Second, Rich argues that the trial court erred in determining the amounts required by the salary-funding schedule for the CADA, the ADAs, and the legal stenographers. Specifically, in the trial court Rich noted that § 14 of the 82 Act, quoted above, which was not impacted by the amendments effected by the 88 Act, required that the salary-funding schedule set forth in the local acts be increased concomitantly with any raises granted by either the County or the State. She thus argued that the salary-funding schedule for the CADA and the ADAs found in the 88 Act, as well as the range provided for legal stenographers in § 7 of the 82 Act, had been modified by raises given over subsequent years to both County and State employees.
The trial court, however, declined to adjust the salary-funding schedule for past raises. As for the CADA and the ADAs, the trial court held that the schedule found in the 88 Act “is the salary schedule that applies today,” and that it would not be modified by County or State raises effected since 1988. According to the trial court, § 14 would require adjustment to the funding levels only when future raises are given by the County or the State to its employees. The trial court’s rationale appears premised on the fact that the funding requirements of the local acts had never been adhered to:
“[A]s a result of the prior agreements and/or practices between previous District Attorneys of this Circuit and the County, the statutory scheme for increasing the schedule of salaries was not followed. It appears to this court that with regard to office funding, the relationship between previous District Attorneys and the County was different from the relationship between the present District Attorney and the County. The Court finds and declares that the decision by previous District Attorneys and the County not to follow Section 14 of the 1982 Act, constitutes a waiver of strict compliance with the statutes. By not adhering to the statutes, the raises authorized therein were waived. Accordingly, this court finds and declares that it will not consider nor grant any back pay or amounts due for County and State salary increases that should have occurred in accordance with the 1982 and 1988 Acts, between 1982 and 2011.”
For similar reasons, it also appears that the trial court did not accept the argument that the salary scale for legal stenographers should be increased to reflect past raises by the County or State and instead declared that the County was required to fund legal stenographers’ salaries at no less than $12,000 per legal stenographer.
*1199 On appeal, Rich contends that the result of the trial court’s order saddles the District Attorney’s Office with funding at a 1988 salary level. Specifically, the 88 Act salary-funding schedule adopted by the trial court set the funding levels for ADAs at a salary range from $28,000 to $58,000. According to the record, the salaries actually paid to the ADAs in the District Attorney’s Office during the proceedings ranged from $46,315.50 to $123,306.02.
On the other hand, the County notes that, if all the County and State salary raises are used to adjust the salary-funding schedule in the 88 Act, then the funding obligation would be astronomically higher: Rich’s motion for a summary judgment presented a salary-funding schedule adjusted for both County and State raises that ranged from $103,752 for the lowest level ADA to $245,676 for the highest level CADA.[8]
On appeal, Rich challenges whether the doctrine of waiver can be applied in this case. Specifically, she notes that it is an affirmative defense that was not pleaded by the County until late in the proceedings when it filed an amended answer on August 27.[9] The amended answer contended that “[pjrior District Attorneys have failed to enforce and follow the requirements of the 82 and 88 Acts. Therefore any claims between 1982 and 2011 have been waived.” The trial court allowed this amended answer, even though it was filed after the third amended counterclaim, which the trial court declined to accept.
We find no authority for the proposition that the failure of past district attorneys to insist that the County adhere to statutorily mandated funding requirements prevents self-executing modification of the salary-funding-schedule amounts provided by the local acts. “[Wjaiver consists of a ‘voluntary and intentional surrender or relinquishment of a known right,’ and the burden of proof in establishing a waiver rests upon the party asserting the claim.” Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 93 (Ala.2005) (quoting Dominex, Inc. v. Key, 456 So.2d 1047, 1057 (Ala.1984)). Although prior district attorneys used their discretion to make agreements with the County to accept lesser funding amounts, nothing before us indicates that they waived—or could have waived—the actual changes to the CADA and ADA salary-funding schedule or the legal-stenographer salary range that were effected when the County and State gave raises. They accepted lesser amounts, but this did not alter the text of the local acts.[10]
*1200 The portions of the trial court’s decision denying modification of salary-funding amounts for the CADA, the ADAs, and the legal stenographers for all raises that occurred after the enactment of the local acts is reversed; the trial court, on remand, shall increase the salary-funding schedule and legal-stenographer scale in accord with any County and State raises that have occurred since the enactment of the local Acts.[11]

II.

The portion of the trial court’s judgment holding that the 82 Act did not require the County to provide funding for the salaries of certain individuals working in the investigation unit of the District Attorney’s Office is affirmed. The portion of the judgment holding that raises subsequently effected by the County and the State did not impact the salary-funding amounts found in the local acts is reversed, and the case is remanded for further proceedings consistent with this opinion.
1130359—AFFIRMED.
STUART, BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., concurs in part and dissents in part.
1130404—AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STUART, BOLIN, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur,
MOORE, C.J., concurs in part and dissents in part.

. This case presents numerous and complicated legal issues. Several different court reporters shared responsibility in reporting this case. Judge Elbrecht’s efforts in handling such a case, away from his home jurisdiction, deserve to be complimented,

. The trial court required Rich to submit, under Ala.Code 1975, § 11-8-3, a budget to the County. However, because the County and prior district attorneys had a past agreement that a budget was not necessary, and because no budget package had been submitted by the County to Rich, Rich was not required to submit a budget for the 2014 fiscal year.

. The County also contends that this act is a general law that supersedes the local acts.

. The County also contends that Ala.Code 1975, § 12-10A-6(a), prevents county supplements for district attorneys. That Code section provides:
"Any district attorney or constitutional officer other than a judge whose compensation is affected by this chapter who receives a local supplement shall have his or her supplement reduced by any increase in his or her State compensation until the supplement is eliminated. No officer appointed or elected after October 1, 2001, shall receive a county supplement or expense allowance in addition to his or her State salary and no salary supplement or expense allowance may increase after June 10, 1999."
Although the County appears to cite this Code section to show a general trend of ending county supplements to certain officials, we nevertheless note that the local acts do not appear to run afoul of this Code section. The "compensation" of Rich, as district attorney, is not impacted by the local acts, and no argument is presented indicating that employees of the District Attorney’s Office are "constitutional officers” as contemplated by this Code section or that funding of their salaries equates to a local or county supplement or expense allowance "in addition " to their salaries.

. Although Rich argues that the salary-funding amounts in the local acts are nevertheless deemed to have increased, see the discussion, infra, under the heading “Case No. 1130404,” there is no challenge to the trial court’s ruling that backpay or past amounts due from the County would not be awarded.

. The County denies that it is seeking relief under Rule 15 (a).

. The County's and the State’s funding obligations were originally addressed in § 1(d) of the 82 Act. The 82 Act required 60% of the ADAs' salaries to be paid by the State and 40% by the County, irrespective of which gave a raise to its employees. The 88 Act amended § 1 and, in part (d), capped the State's obligation at $15,000.

. There were, at the time of lower court proceedings, five Level 1 Step 6 ADAs, whose salaries ranged from $77,817.11 to $123,306.02, that, under Rich’s calculations, would be funded at $211,542 each if the salary-funding levels were adjusted to reflect County and State raises.

. The County does note that, in its first answer, it pleaded waiver as to Rich’s claim for funds to pay the salaries of legal stenographers.

. We note that the arguments in this case and the historic practice are based on the premise that the local acts govern the funding amounts that must be provided by the County for salaries of certain employees in the District Attorney’s Office. As the trial court held, funding does not have to be provided for positions not occupied and, by necessity, does not have to be provided above the salary amounts the varying levels of District Attorney’s Office employees are currently being paid. Thus, although the ceiling for salary funding for the CADA and ADA positions, adjusted as mandated in the local acts, may be shockingly high, the County is to provide funding for the actual salaries, and not funding for the potential funding levels the local acts anticipated. The adjusted salary-funding schedule provides merely a maximum. As the record demonstrates, the actual salaries paid to the CADA and ADAs do not come near the potential funding obligation required of the County for each position.

. Rich also twice mentions in her brief that the trial court erred in holding that the County was not required to fund vacant positions. However, we see no argument elaborating on this purported error.